Filed 6/23/25  In re A.I.P. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re A.I.P. et al., Persons Coming Under the Juvenile Court Law. | B335574 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 23CCJP03635A-E) |
| Plaintiff and Respondent, | |
| v. | |
| N.P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Dismissed.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother, N.P., challenges the jurisdictional finding that the juvenile court made under Welfare and Institutions Code section 300, subdivision (a),[1] based on allegations that mother physically abused one of her children. The court also found jurisdiction was proper based on other allegations against mother, including identical allegations of physical abuse under subdivisions (b) and (j) of section 300, as well as additional allegations against father, E.P. Mother does not challenge those jurisdictional findings. We dismiss the appeal for lack of justiciability.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother is the parent of five children: A.I.P (born 2006), B.P. (born 2009), Ar.P. (born 2012), J.P. (born 2012), and R.P. (born 2022). Father, E.P., is the father of Ar.P., J.P., and R.P. A.I.P. and B.P. have different biological fathers. None of the fathers are parties to this appeal. We therefore focus on the facts relevant to the issue raised by mother.

In September 2023, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that J.P. disclosed mother recently slapped J.P. while J.P. was sleeping. Mother previously told the reporting party she would slap J.P. "because the child tends to talk back to her." J.P. also disclosed that about three weeks before, father was upset with J.P. and threw a water bottle at her that hit her in the eye.

_____

[1]     All further statutory references are to the Welfare and Institutions Code.

2

A social worker met with the family the following week. J.P. told the social worker mother disciplined her by pulling her hair, hitting her "on the face with an open hand," and hitting her with a belt. J.P. said the last time mother hit her was about a week ago. Further, J.P. stated father hit her and threw things at the children when he was upset at them.

Ar.P. told the social worker that mother disciplined the children by turning off the Wi-Fi and taking away their electronics. Ar.P. also said mother had hit the children with a broom or shoes and had thrown things at them. A.I.P. said she only saw mother slap J.P. once about a month ago. B.P. denied ever seeing mother slap the children.

Mother said she slapped J.P. the week before because J.P. "was talking back to [her]." Mother denied hitting the children any other time. Toward the end of mother's interview, father took R.P. into his van, which was "parked in the middle of the street," and drove off with the child on his lap to a "next-door laundromat parking lot."

Father denied he or mother hit the children. However, father admitted he threw a water bottle at Ar.P. and J.P., though he did not intend to hurt them. Father further said mother was "very upset with the children and [him] because the children are telling people at the school and the social workers everything."

Approximately two weeks after the interview, father tested positive for methamphetamine. DCFS requested and was granted a removal order removing the children from father. The request was denied as to mother, and the children remained in her care.

DCFS filed a petition pursuant to section 300, subdivisions (a), (b), and (j). The petition alleged the children

were at risk due to mother's physical abuse of J.P. (counts a-1, b-1, and j-1), father's physical abuse of J.P. and Ar.P. (counts a-2, a-3, b-2, b-3, j-2, j-3), father's substance abuse of methamphetamine and marijuana (count b-4), mother's failure to protect the children from father's physical abuse and substance abuse (counts b-2, b-4, and j-2), and father driving R.P. in a vehicle without a safety restraint seat (b-5 and j-4). The allegations concerning mother's physical abuse of J.P. in counts a-1, b-1, and j-1 were identical.

A dependency investigator interviewed the family in December 2023. As to the allegations of mother's physical abuse of J.P., A.I.P told the investigator, "'[Mother] doesn't hit them, she yells at them. Well, she doesn't hit them bad, once in a while; she throws them a chankla (shoe), just to get them scared.'" (*Sic.*) B.P. stated mother did not hit the children but only "'slaps their butt, or pulls their hair and screams at them.'" Ar.P. said mother did not slap her or pull her hair. J.P. reported mother did not slap her "on purpose" and only screamed at the children. However, J.P. later said that "mother hit [J.P.] with her hand to [J.P.'s] face" and that mother pulled the children's hair "but only once in [a] while."

Mother acknowledged slapping J.P.'s face but said it was "not hard." Mother stated, "[J.P.] was screaming and would not stop screaming, so I slapped her and told her to stop screaming. Now she talks to me better." Mother denied hitting the children with a belt or pulling their hair. Father told the investigator, "I have never seen [mother] slap J.P.'s face. Pull hair yes, I have seen it. I have never seen her hit them with a belt. She has asked me for the belt." (*Sic.*)

At the jurisdiction hearing, the juvenile court sustained all the allegations in the section 300 petition as pled.  At the disposition hearing, the court released the children to mother's care and removed them from father's custody.  Mother timely appealed.

In July and August 2024, the juvenile court found the conditions that justified the initial assumption of jurisdiction under section 300 no longer existed and were not likely to exist if supervision was withdrawn.  The court terminated jurisdiction, with mother retaining custody over the children.[2]

**DISCUSSION**

Mother argues substantial evidence did not support the jurisdictional finding under section 300, subdivision (a), based on her physical abuse of J.P (count a-1).  Mother does not challenge the juvenile court's jurisdictional findings against her made under section 300, subdivisions (b) and (j), or the multiple findings against father.  DCFS contends mother does not raise a justiciable issue, and the appeal should be dismissed.  We conclude mother's contentions are not justiciable.

"Pursuant to the doctrine of justiciability, ""[a] judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition.""" [Citation.]  Application of the doctrine of justiciability in the dependency context leads to the conclusion that '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of

---

[2]    We grant mother's request for judicial notice of the juvenile court's post-appeal orders terminating jurisdiction.

5

jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]  This is true because no effective relief could be granted in such a situation, as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such additional jurisdictional grounds." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 328–329.)

Mother's appeal is nonjusticiable because regardless of whether we grant mother relief as to the count a-1 finding, the juvenile court had jurisdiction over the children based on the identical sustained findings under counts b-1 and j-1 (and the findings as to father), which are not challenged on appeal.  Thus, even if mother were to prevail, we would not disturb the court's jurisdictional order.  (*In re D.P.* (2023) 14 Cal.5th 266, 283–284 (*D.P.*).)  Furthermore, the juvenile court terminated jurisdiction and awarded mother custody of the children.

Mother asks us to exercise our discretion to consider the merits of her challenge to the finding on count a-1.  "Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.*, *supra*, 14 Cal.5th at p. 282.)  Our Supreme Court has provided a non-exhaustive list of factors to be considered when deciding whether a court should exercise discretionary review of a moot dependency appeal: (1) "whether the challenged jurisdiction finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or "'could have other consequences for [the appellant] beyond jurisdiction'"" (*Id.* at

6

p. 285); (2) "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct" (*Id.* at pp. 285–286); and (3) "why the appeal became moot." (*Id.* at p. 286.) "[N]o single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal." (*Ibid.*)

Mother contends discretionary review is appropriate because she promptly complied with her case plan and the outcome of her appeal "may impact [her] ability to obtain employment" or "have far-reaching" effects in "future dependency proceedings, if one were to be filed." But mother does not identify any specific consequences or prejudice she could suffer, nor does she identify how the finding under count a-1 could impact her ability to obtain employment. Any impact the challenged finding may have in hypothetical future proceedings is too speculative for us to exercise our discretion to consider the challenged finding. (*D.P.*, *supra*, 14 Cal.5th at p. 282; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494–1495, overruled in part on other grounds by *D.P.*, at p. 283.) This is particularly true because mother's conduct underlying the count a-1 finding was also the basis of the count b-1 and j-1 findings she does not challenge. Consequently, identical allegations concerning mother's physical abuse of J.P. would remain under counts b-1 and j-1, regardless of whether mother successfully challenged the findings made as to count a-1.

Furthermore, mother has not demonstrated that the challenged count is based on particularly stigmatizing conduct, distinguishable from the findings she does not challenge, and she does not offer any other reason to show discretionary review is appropriate. While we commend mother for her compliance with her case plan, this factor alone does not warrant reaching the

7

merits of mother's challenge.  Accordingly, we decline to address the merits of mother's appeal.

## DISPOSITION
The appeal is dismissed as nonjusticiable.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, Acting P. J.


COLLINS, J.

8